UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Roland G. Tarr

    v.                                            Case No. 17-cv-731-PB
                                              Opinion No. 2019 DNH 032
Nancy A. Berryhill,
Acting Commissioner,
Social Security Administration

**O R D E R**

Roland G. Tarr seeks review, pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3), of the Acting Commissioner's decision that denied his applications for social security disability benefits under Title II and supplemental security income under Title XVI. Tarr moves to reverse the decision on the grounds that the Administrative Law Judge ("ALJ") did not evaluate his mental impairments properly and erred in weighing the medical opinion evidence. The Acting Commissioner moves to affirm, contending that there were no errors and that substantial evidence supports the decision.

**I.  Standard of Review**

Judicial review under § 405(g) "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). The court decides legal issues de novo but defers to the ALJ's factual findings if they are supported by substantial evidence. Ward v. Comm'r of Soc. Sec.,

211 F.3d 652, 655 (1st Cir. 2000). Substantial evidence is "more than a scintilla of evidence" but less than a preponderance. Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018). The court must affirm the ALJ's findings, even if the record could support a different conclusion, when "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the ALJ's] conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (internal quotation marks omitted); accord Purdy, 887 F.3d at 13.

## II. Background

Tarr was born in 1988 and was twenty-six years old when he applied for benefits. During the hearing, Tarr testified about his learning and behavior difficulties, which began in his childhood. He attended special education classes and then received residential treatment at "Wediko". Tarr believes that special education services were necessary because of his learning and comprehension problems, including attention deficit and hyperactivity disorder ("ADHD"). He graduated from high school when he was twenty.

Tarr and his mother testified that he has suffered from depression and ADHD as an adult. As a result, he had difficulty functioning in the jobs that he tried. Tarr lives with his girlfriend and their two children. Tarr is able to care for the

2

children and do some household chores.  Tarr was taking Adderal and Celexa at the time of the hearing.

A.  Treatment History

Tarr sought treatment with Kathryn Scoville, ARNP, for his ADHD, anxiety, and depression symptoms beginning in February of 2015.  As part of the physical examination, ARNP Scoville noted that Tarr's judgment, insight, mood, orientation and affect were all normal and that his memory was intact.  ARNP Scoville wrote that she hoped Adderall would help Tarr function better at home and in the work force.  An examination in April of 2015 also produced normal results.

In May of 2012, Tarr was evaluated by Evelyn Harriott, Ed.D., before Tarr's disability onset date.  Gregory Korgeski, Ph.D. did a consultative psychological examination on April 13, 2015.  On April 23, 2015, Laura Landerman, Ph.D., completed a Psychiatric Review Technique Form as a non-examining state agency consultant.  Elizabth Sayre, a Human Resources Manager with the City of Keene, provided a statement dated October 6, 2016, about Tarr's background based on her services to Tarr and his mother since Tarr was a toddler.

Tarr had weekly therapy sessions with Jessica Howard, BA, at Monadnock Family Services, between October 4, 2016, and

December 27, 2016.[1]  Howard completed a Medical Source Statement on January 3, 2016.

B.  Procedural History

Tarr applied for benefits on October 31, 2014, and later amended his onset of disability date to December 31, 2014.  He claimed disability due to affective disorder, ADHD, anxiety disorders, learning disorder, chronic headaches, and left writs arthritis.  A hearing was held before an ALJ on February 14, 2017.  Tarr testified, with an appointed representative, and his mother testified.  A vocational expert and two medical experts also testified.  One of the medical experts was Alfred Jonas, M.D., a non-examining psychiatric consultant.

The ALJ found that Tarr was not disabled at Step Five.[2]  In support, the ALJ found at Step Two that Tarr had medically determinable severe impairments due to left wrist impairment and headaches but did not find severe mental impairments.  She assessed a residual functional capacity to perform light work with certain physical, postural, and environmental restrictions.

---

[1] Howard signs her name as "Jessica Howard BA."  In the paperwork, she is identified as "ACT MENTAL HEALTH PROFESSIONAL II."

[2] In determining whether a claimant is disabled for purposes of social security benefits, the ALJ follows a five-step sequential analysis.  20 C.F.R. § 404.1520 & § 416.920.  The claimant bears the burden through the first four steps of proving that his impairments preclude him from working.  Purdy, 887 F.3d at 9.  At the fifth step, the Acting Commissioner has the burden of showing that jobs exist which the claimant can do.  Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991).

She also restricted Tarr to unskilled work that involved routine and simple instructions, no fast-paced work, and no more than occasional interaction with the public. Based on the vocational expert's testimony, the ALJ found that Tarr could work in occupations such as a housekeeper/cleaner and a laundry sorter. The Appeals Council denied Tarr's request for review.

### III. Discussion

Tarr moves to reverse the decision on the grounds that the ALJ failed to find severe medically determinable mental impairments at Step Two and then failed to consider Tarr's mental impairments in assessing his residual functional capacity. Tarr contends that the ALJ did not properly weigh the medical evidence and other evidence in the record, which, he argues, shows that he had severe medically determinable mental impairments. The Acting Commissioner moves to affirm, arguing that the ALJ properly considered the evidence in the record, appropriately relied on medical opinions, and correctly assessed Tarr's residual functional capacity.

A. Step Two

At Step Two, the ALJ must determine whether the claimant has "a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration

requirement." § 404.1520(a)(4)(ii).[3]  To be medically determinable, a severe mental impairment "must result from . . . psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1521.  That is, a "mental impairment must be established by objective medical evidence from an acceptable medical source" but cannot be established by the claimant's "statement of symptoms, a diagnosis, or a medical opinion."  Id.

Step Two imposes a threshold evaluation that is intended to screen out groundless claims where the medical evidence shows only abnormalities or impairments that "'would have no more than a minimal effect on an individual's ability to work.'"  McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1124 (1st Cir. 1986) (quoting SSR 85-28).  If the ALJ finds at least one severe impairment at Step Two, the analysis progresses on through the steps as may be necessary.  For that reason, any error in failing to find additional impairments at Step Two is not grounds for reversal as long as the ALJ properly assesses the claimant's residual functional capacity in light of all of the

---

[3] Because the regulations implementing the standard for disability under Title II (§ 404.1520 – § 404.1530) and under Title XVI (§ 416.920 – § 416.930) are the same, the court will cite the Title II regulations.  See Sullivan v. Zebley, 493 U.S. 521, 525, n.3 (1990).

6

claimant's impairments later in the analysis.[4] Lavoie v. Berryhill, 2018 WL 922140, at *4-*5 (D.N.H. Feb. 16, 2018).

In this case, the ALJ found severe physical impairments due to left wrist impairment and headaches. The ALJ acknowledged that the record showed that Tarr also had mental impairments, including anxiety, but found that those impairments did not cause more than minimal limitations in Tarr's ability to perform "basic mental work activities." Doc. 7-2, at *17. The ALJ explained that his finding was based on opinions provided by Dr. Jonas and Dr. Korgeski, the lack of evidence in the medical record showing mental abnormalities, Tarr's treatment history which showed improvement through medication, and Tarr's own statements about his activities. Despite the Step Two findings, the ALJ considered Tarr's mental impairments in the context of assessing his residual functional capacity and added limitations to address those impairments, as is addressed below.[5]

---

[4] Although Tarr faults the ALJ for failing to find severe mental impairments at Step Two, he acknowledges that if an error occurred it was harmless.

[5] To the extent Tarr argues that the ALJ improperly conflated the Step Two finding with the residual functional capacity assessment and focused too heavily on objective medical evidence, he is mistaken. Tarr cites no authority that requires an ALJ to repeat the evaluation of the record evidence at different steps of the analysis. The ALJ complied with both standards, which is demonstrated by the different findings at Step Two and later in assessing residual functional capacity.

B. Opinion Evidence

Tarr contends that the ALJ erred in failing to properly consider and weigh the medical opinions pertaining to his mental impairments. Specifically, Tarr argues that the ALJ should have found severe mental impairments, including a severe anxiety disorder, based on opinions provided by Dr. Harriott, Dr. Korgeski, Dr. Landerman, and Jessica Howard, BA. Tarr further contends that the ALJ erred in relying on the opinion provided by Dr. Jonas. The Acting Commissioner contends that the ALJ properly evaluated the medical opinion evidence.

"Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). "Acceptable medical source," as used in the regulation, includes licensed physicians and licensed or certified psychologists but does not include licensed counselors or clinicians.[6] 20 C.F.R. § 404.1502(a); Vorce v. Berryhill,

---

[6] The regulations distinguish between "acceptable medical sources" and those who are not acceptable medical sources because only acceptable medical sources can establish a medically determinable impairment, give medical opinions, and be considered as treating sources. Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims, Social Security Ruling 06-03, 1006 WL 2329939, at *2 (Aug. 9, 2006). Opinions from sources who are not acceptable medical sources may provide evidence about the

2018 WL 3854786, at *6 (D.N.H. Aug. 14, 2018). Opinions from medical sources who are not acceptable medical sources and from nonmedical sources are also considered and weighed using the same criteria that apply to acceptable medical sources but the weight of the opinion depends on the particular facts in each case. § 404.1527(f).

Medical opinions are evaluated based upon the nature of the medical source's relationship with the claimant, the extent to which the source provides evidence to support the opinion, the extent the opinion is consistent with other evidence in the record, the specialization of the medical source, and other factors including the source's understanding of the social security system. § 404.1527(c). In general, an ALJ will give more weight to the opinion of a treating source and may give that opinion controlling weight if it is well supported and not inconsistent with other medical evidence in the record. § 404.1527(c)(2). The ALJ is required to give "good reasons" in the disability decision for the weight given to treating source opinions. Id.

1. Dr. Jonas

Dr. Jonas is a psychiatrist who testified at the hearing by telephone as a non-examining consultant based on his review of Tarr's record. Dr. Jonas testified that the record was unclear

---

severity of the claimant's impairments and how the impairments affect his ability to function. Id.

9

as to what diagnoses had been made for Tarr. He noted that the record showed normal cognitive functioning on examinations done in May of 2012 and April of 2015.

He said the record did not show that Tarr had functional impairments in his ability to interact with people in an evaluation setting. Based on the results in the record, Dr. Jonas concluded that Tarr probably had no impairment or possibly had only a mild impairment. Specifically, Dr. Jonas testified that the record showed no impairment in appropriate social functioning and in Tarr's ability to adapt and adjust to various settings. Dr. Jonas explained that if depression were causing difficulties for Tarr, he would be prescribed a higher dose of Celexa. Dr. Jonas concluded that Tarr did not meet or equal a listed impairment.

In response to the ALJ's questions, Dr. Jonas again said that it was not clear Tarr had any functional impairments and that no restrictions were necessary. He explained that the record did not support the level of functional difficulty that Tarr described in his testimony or that some opinions suggested.

The ALJ gave Dr. Jonas's opinions great weight. The ALJ acknowledged that the opinion of a non-examining source generally is entitled to less weight than opinions of examining sources. Nevertheless, the ALJ considered the other criteria in § 404.1527(c), as she was required to do. The ALJ found it important that Dr. Jonas is a psychiatrist, he reviewed all of

the evidence in the record, and the the objective evidence in the record supported the opinion.

Tarr contends that was error because Dr. Jonas limited his opinion to objective evidence in the record and because his opinion was different from the other opinions. Tarr cites no authority that prohibits an ALJ from giving great weight to a medical expert's opinion simply because the expert bases his opinion exclusively on objective evidence.

Tarr also cites no authority that precludes reliance on a medical opinion that differs from other opinion evidence in the record. Instead, an ALJ is required to assess medical opinions in light of the criteria provided in § 404.1527(c). The ALJ in this case did exactly that. Therefore, Tarr has shown no error in the weight the ALJ gave to Dr. Jonas's opinion.

2. Dr. Korgeski

Following a consultative evaluation of Tarr, Dr. Korgeski listed chronic depressive disorder, ADHD, unspecified anxiety disorder, reading comprehension learning disability, features of dependent personality disorder, and Tarr's reports of physical conditions under the title "DIAGNOSTIC IMPRESSIONS." Based on his testing, Dr. Korgeski found that Tarr had the ability to perform the activities of daily living, could interact appropriately with others except that he could not manage public contact well, could understand and remember work-like procedures, could understand and remember very short and simple

instructions, could concentrate and complete tasks that would allow some variety (such as landscaping or janitorial work) with minimal competitive requirements, and could tolerate stress in a work environment.  The ALJ gave Dr. Korgeski's opinion significant weight.

Tarr argues that the ALJ should have focused more on some of the testing results rather than Dr. Korgeski's opinion and that the ALJ did not incorporate all parts of the opinion into the residual functional capacity finding.  Tarr does not argue that the ALJ improperly weighed Dr. Korgeski's opinion but only that the ALJ should have found severe medically determinable impairments at Step Two, based on the opinion, and should have formed a more restrictive residual functional capacity.  Those arguments do not undermine the weight given to the opinion.

   3.  Dr. Landerman

Dr. Landerman completed a Psychiatric Review Technique Form as a non-examining state agency consultant in April of 2015.  Dr. Landerman found that he had moderate difficulties with daily activities, social functioning, and concentration, persistence, and pace.  She found that Tarr could understand, recall, and carry out short and simple instructions at an acceptable pace for a full-time work schedule.

The ALJ gave Dr. Landerman's opinion of moderate limitations little weight because "she neither examined the claimant nor based her opinion on the most recent evidence of

record." Doc. 7-1, at *20. Instead, the ALJ found Dr. Jonas's opinion superior because it was based on the updated record. Dr. Jonas testified that he did not agree with Dr. Landerman's opinion that Tarr had moderate limitations in his functional ability because the evaluations in the record, in which Tarr could function and respond appropriately, contradicted Dr. Landerman's reported limitations.

Tarr argues that the ALJ erred in failing to provide "good reasons" for the weight given Dr. Landerman's opinion because her opinion was more consistent with other opinions in the record and because Dr. Jonas was also not an examining source. As the Acting Commissioner points out, Dr. Landerman was not a treating source, and, therefore, the ALJ was not required to give "good reasons" for the weight given to her opinion. Further, the ALJ relied on Dr. Jonas's opinion and his review of a more complete record. Tarr has shown no error in the ALJ's consideration of Dr. Landerman's opinion.

   4. Jessica Howard, BA

Jessica Howard, who is identified as a mental health technician, completed a Medical Source Statement on January 3, 2016, in which she listed diagnoses of a major depressive disorder and ADHD and listed symptoms Tarr reported. Howard found that Tarr was limited most of the time in his ability to tolerate stress at work and to accept instructions and criticism, and was limited a third of the time in his ability to

13

complete tasks, maintain functioning, remember instructions, and perform at a consistent pace.  She also stated that he would be absent more than four days each month.

The ALJ noted Howard's brief treating relationship with Tarr for a four-month period and concluded that it was not long enough to give Howard a longitudinal picture of Tarr's condition.  The ALJ also noted that Howard was not an acceptable medical source, for purposes of providing a diagnosis of a medically determinable impairment.  The ALJ did consider the opinion with respect to the severity of Tarr's impairments and the effects on his functional capacity.

Tarr again faults the ALJ for failing to provide a "good reason" for giving Howard's opinion little weight.  Because Howard is not an acceptable medical source, however, the ALJ was not required to provide a good reason.  <u>Boyde v. Berryhill</u>, 2018 WL 2187370, at *7 (D. Mass. May 11, 2018).  The ALJ was only required to consider Howard's Statement as part of the record, which she did.  Therefore, Tarr has shown no error.

    5.  <u>Dr. Harriott</u>

Dr. Harriott, a state agency consultant, evaluated Tarr in May of 2012, two and a half years before Tarr's amended onset date.  As such, Dr. Harriott's evaluation does not pertain to the relevant period in this case.  Tarr faults the ALJ for failing to discuss Dr. Harriott's opinion but does not explain how that opinion is pertinent to the relevant period.

Dr. Jonas reviewed Dr. Harriott's report as part of the record. He noted the tests and evaluations in Dr. Harriott's report as support for his opinion that Tarr has no mental impairment that caused functional limitation. Therefore, Dr. Harriott's opinion was considered and provided evidence in the case.

C. Other Evidence

An ALJ is required to consider all relevant evidence in a claimant's record. § 404.1527(b). Tarr contends that the ALJ did not properly consider other evidence in the record, including the function report and testimony provided by Tarr's mother, the statement submitted by Keene Human Services Manager Elizabeth Sayre, and Tarr's statements and testimony. In each instance, however, the ALJ explained the weight given and the reasons she did not accept those opinions and statements.

The ALJ noted that despite the opinion-like form of Tarr's mother's report, she is not an acceptable medical source. In addition, the ALJ found that the record as a whole contradicted the severity of Tarr's limitations as reported by his mother.[7] The ALJ also noted that Sayre is not an acceptable medical

---

[7] Tarr argues that his mother's opinion is bolstered by Sayre's statement and therefore should have been given more weight. The ALJ considered all of the evidence in the record to assess the weight for the statements from Tarr's mother and Sayre. Taken in that context, the ALJ concluded that Tarr's mother's opinions were too extreme and were inconsistent with the record as a whole.

15

source, for purposes of providing a medical opinion, and did not provide any specifics about Tarr's limitations.  Further, to the extent Tarr's mother and Sayre provided opinions that Tarr cannot work, that is a decision reserved to the Acting Commissioner.  § 404.1527(d)(1).  The reasons given are sufficient to support the ALJ's evaluation of the evidence.

Tarr faults the ALJ for taking his statements out of context and overstating the extent of his daily activities.  The ALJ found that Tarr's statements and allegations of disabling limitations were contradicted by some of his statements about his activities, such as caring for his children, using public transportation, shopping, using a computer, and playing video games.  Although Tarr points to other statements where he described greater limitations, as the ALJ stated, Tarr's statements are not consistent.

As long as the ALJ follows the correct legal principles, it is the ALJ's responsibility to draw inferences and resolve conflicts in the evidence.  Irlanda Ortiz, 955 F.2d at 769.  Tarr shows no error in the ALJ's assessment of the statements provided by his mother and Sayre and Tarr's allegations of disabling limitations.

D.  <u>Residual Functional Capacity Assessment</u>

Tarr argues that the ALJ erred in failing to assess his mental limitations and their effects on his functional abilities.  He states that the ALJ provided "virtually no discussion of the mental impairments after step 2" and that his mental impairments should have been assessed under the Part B requirements in the Listing of Impairments.  Tarr also acknowledges, however, that the ALJ did discuss mental impairments.

Tarr, who is represented by counsel, appears to be relying on the Step Three standard where the ALJ considers the medical severity of a claimant's impairments to determine whether they meet or equal a listing in Appendix 1, Subpart P.  20 C.F.R. § 404.1520(a)(4)(iii).  If the severity of the impairments meets or equals a listing, then the claimant is disabled, and the analysis ends.  <u>Id.</u>  If not, the analysis continues on to Steps Four and Five where the ALJ does a residual functional capacity assessment and determines whether the claimant can do his past work or other work.  §§ 404.1520(4)(iv) & (v).  The ALJ addressed Step Three and found that Tarr's impairments did not meet or equal a listed impairment.  Tarr does not challenge that finding but instead argues that the listing requirements apply for assessing residual functional capacity.

In contrast to Step Three, the residual functional capacity assessment is a finding of the most a claimant can do in a work

17

setting despite his limitations caused by impairments. 20 C.F.R. § 404.1545(a)(1). An ALJ's assessment is reviewed to determine whether it is based on proper legal standards and is supported by substantial evidence. Nguyen, 172 F.3d at 35-36. An ALJ generally cannot interpret medical data in a claimant's record in functional terms. Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996). For that reason, an expert's functional capacity assessment, generally in the form of a medical opinion, is necessary to evaluate a claimant's work capacities in light of his impairments. Id.; see also Swain v. Berryhill, 2018 WL 5342714, at *5 (D.N.H. Oct. 29, 2018).

Contrary to Tarr's argument, the ALJ did address mental impairments to assess his residual functional capacity. The ALJ noted that his mental impairments were not severe and referred to the discussion of impairments at Step Two. The ALJ relied on the opinions provided by Dr. Jonas and Dr. Korgeski and included limitations in the functional capacity assessment to address the limitations found in Dr. Korgeski's opinion. Specifically, the ALJ limited Tarr to light work that did not require exposure to potential hazards, unskilled worked that involved only routine and simple instructions, no fast-paced work, and no more than occasional interaction with the public.

Taken in light of the opinions provided by Dr. Jonas and Dr. Korgeski, the residual functional capacity assessment is

supported by substantial evidence in the record and is based on proper legal standards.

## IV. Conclusion

Pursuant to sentence four of 42 U.S.C. § 405(g), I grant the Acting Commissioner's motion to affirm (Doc. no. 12) and deny Roland Tarr's motion to reverse (Doc. no. 11).  The clerk is directed to enter judgment accordingly and close the case.

**SO ORDERED**

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

March 4, 2019

cc: Janine Gawryl, Esq.
Lisa G. Smoller, Esq.